IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| TAMEKA WALKER,<br><br>Plaintiff,<br><br>v.<br><br>DEPUTY MICHAEL MORTON;<br>DEPUTY JOSEPH HAWKINS;<br>CORPORAL BRYAN MEALING;<br>CORPORAL LESLIE GAITER; and<br>SHERIFF EUGENE BRANTLEY,<br><br>Defendants. | ) | Civil Action File No.: 1:25-CV-00100<br><br>**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS** |

NOW COMES Defendants Michael Morton, Joseph Hawkins, Bryan Mealing, Leslie Gaiter, and Sheriff Eugene Brantley ("Defendants"), and file their Statement of Undisputed Material Facts pursuant to Rule 56.1 of the Local Rules of The Southern District of Georgia.

1. This case arises from a traffic stop and arrest of plaintiff Tameka Walker ("Plaintiff") that occurred on September 13, 2023 at 3:25 p.m. (Exh. "B" – Decl. of Morton at ¶ 3 and Decl. Exh. 1.)

2. Plaintiff was leaving a convenience store and driving to MCG to pick up her son. (Exh. "A" – Depo. of Pl. at p. 11.)

3. As plaintiff exited the convenience store, she entered the far left turn lane to make a U-turn to travel towards Windsor Springs Road. (Exh. "A" – Depo. of Pl. at p. 11.)

4. At this point, Deputy Morton initiated a traffic stop of plaintiff's vehicle for excessive window tint. (Exh. "A" – Depo. of Pl. at p. 11; Exh. "B" – Decl. of Morton at ¶ 3 and Decl. Exh. 1.)

5. Upon approaching plaintiff's vehicle, Deputy Morton informed plaintiff that he stopped her for the window tint on the vehicle. (Exh. "A" – Depo. of Pl. at p. 36.)

6. Plaintiff has no evidence that excessive tint was not the reason for her traffic stop. (Exh. "A" – Depo. of Plaintiff at pp. 12, 15-18, 36.)

7. When Deputy Morton tested the tint with his window tint meter, the tint measured 17%, in violation of Georgia window tint law. (Exh. "B" – Decl. of Morton at ¶ 11 and Decl. Exhs. 1, 2.)

8. Deputy Morton had reasonable suspicion to believe a traffic violation had occurred, as he observed window tint on the vehicle that appeared to violate Georgia law and articulated to plaintiff that he stopped her vehicle for window tint. (Exh. "A" – Depo. of Plaintiff at pp. 12, 15-18, 36; Exh. "B" – Decl. of Morton at ¶ 3 and Exhs. 1 and 2.)

9. Deputy Morton asked plaintiff if she knew what the tint was on the windows, but she did not. (Exh. "A" – Depo. of Pl. at p. 36.)

10. At this point, Deputy Morton asked for plaintiff's license, which plaintiff provided, and Deputy Morton returned to his vehicle to perform a routine records check on plaintiff and verify her driver's license, insurance and registration of the vehicle. (Exh. "A" – Depo. of Pl. at pp. 12, 15; Exh. "B" - Decl. of Morton at ¶ 4 and Exh. 1, 2.)

11. Within a minute or two of the initial stop, Deputy Hawkins with the K-9 task force arrived on scene with his narcotics-detection K-9, Gajes. (Exh. "A" – Depo. of Pl. at pp. 12, 42; Exh. "C" – Decl. of Hawkins at ¶ 3 and Exh. 1.)

12. Around the same time, Deputy Mealing arrived on scene. (Exh. "A" – Depo. of Pl. at p. 12; Exh. "D" – Decl. of Mealing at ¶ 3.)

13. On the date in question, both Deputy Hawkins and Gajes were certified in narcotics detection to detect odor of methamphetamine and marijuana, among others odors. (Exh. "A" – Depo. of Pl. at pp. 49-50; Exh. "C" – Decl. of Hawkins at ¶ 8 and Exh. 2.)

14. Deputy Hawkins and Gajes were trained in narcotics odor detection and have received over 500 hours of training for detection and recognition of narcotics odors. (Exh. "C" - Dec. of Hawkins, ¶ 9.)

15. While Deputy Morton was in his vehicle performing the routine records check and verifying plaintiff's information, Deputy Hawkins deployed Gajes to conduct an open-air sniff around the exterior of plaintiff's vehicle. (Exh. "A" – Depo. of Pl. at p. 42; Exh. "B" – Decl. of Morton at ¶ 4; Exh. "C" – Decl. of Hawkins at ¶ 4.)

16. The K-9 open air sniff occurred within two minutes of the traffic stop beginning. (Exh. "A" – Depo. of Pl. at pp. 42.)

17. When the open air sniff occurred, Deputy Morton had not completed the records check and verification of plaintiff's information. (Exh. "B" – Decl. of Morton at ¶ 5 and Exh. 2.)

18. During the open air sniff, Gajes displayed a trained final response on the right side of plaintiff's vehicle by becoming rigid in his stance and coming to a final alert, a sit, indicating the presence of the odor of narcotics. (Exh. "C" – Decl. of Hawkins at ¶ 5 and Exh. 1.)

19. This alert was observed by both Deputy Hawkins and Corporal Mealing. (Exh. "C" – Decl. of Hawkins at ¶ 5 and Exh. 1; Exh. "D" – Decl. of Mealing at ¶¶ 4-5.)

20. As the Plaintiff testified in her deposition, plaintiff has no training or expertise in K-9 drug detection, she has no training or expertise in recognizing K-9 alerts, and she cannot affirmatively state that the K-9 did not alert. (Exh. "A" - Dep. of Plaintiff, pp. 25-26, 33.)

21. As Plaintiff stated in her deposition, she cannot point to any evidence that the defendants prolonged the traffic stop for the open air sniff to occur. (Exh. "A" - Dep. of Plaintiff, pp. 60-61.)

22. Based on this alert, deputies searched plaintiff's vehicle. (Exh. "B" – Decl. of Morton at ¶ 6.)

23. The search revealed a white, powdery substance that field tested positive for methamphetamine and two pills identified as oxycodone contained in Plaintiff's purse and approximately 20 grams of marijuana found under the driver's seat. (Exh. "B" – Decl. of Morton at ¶ 7.)

24. The oxycodone pills were identified based upon Deputy Morton's training and experience in narcotics to recognize controlled substances, based upon the distinct markings and the characteristics of the oxycodone pills. (Exh. "B" – Decl. of Morton at ¶ 8.)

25. Deputy Morton used the website drugs.com and its pill identifier to visually match the appearance, markings, and characteristics of the oxycodone pills to confirm the identification. (Exh. "B" – Decl. of Morton at ¶ 9.)

26. Drugs.com is an accepted resource used by deputies as a reliable source to confirm pill identity. (Exh. "B" – Decl. of Morton at ¶ 10.)

27. Plaintiff was arrested and transported to the detention center by Deputy Morton, where she was charged with felony possession of methamphetamine, felony possession of oxycodone, and cited for a window tint violation. (Exh. "B" – Decl. of Morton at ¶ 11-12 and Exh. 1 and 2.)

28. Plaintiff was not charged for possession of marijuana by Deputy Morton. (Exh. "B" – Decl. of Morton at ¶ 12.)

29. Because this case, assigned case number 23-174960, involved felony charges of possession of methamphetamine and possession of oxycodone, the chain of custody for the marijuana, methamphetamine, and oxycodone pills in this case was marked as a felony. (Exh. "B" – Decl. of Morton at ¶ 17.)

30. Deputy Gaiter was not the arresting or reporting officer regarding this traffic stop, and he did not prepare a report related to it or have any further involvement after the plaintiff was transported from the scene. (Exh. "E" – Decl. of Gaiter at ¶ 4.)

31. Deputy Gaiter did not prepare, review, approve, or have any involvement with the chain of custody of any evidence related to this traffic stop and arrest of the plaintiff. (Exh. "E" – Decl. of Gaiter at ¶ 5.)

32. Deputy Hawkins did not destroy, tamper with or alter any video or other evidence in connection with the traffic stop and arrest of plaintiff. (Exh. "C" – Decl. of Hawkins at ¶ 11.)

33. To the best of his knowledge, Deputy Hawkins has never had another complaint or allegation lodged against him for falsifying a K-9 Report or falsifying a K-9 alert. (Exh. "C" – Decl. of Hawkins at ¶ 12.)

34. The defendants' investigation into the events that occurred at the scene of the traffic stop in question were carried out in the performance of their normal job duties as deputies with the Richmond County Sheriff's Office (Exh. "B" - Decl. of Morton, II at ¶¶ 13, 16; Exh. "C" – Decl. of Hawkins at ¶ 13; Exh. "D" – Decl. of Mealing at ¶ 12; Exh. "E" – Decl. of Gaiter at ¶ 7.)

35. Plaintiff bonded out two days after her arrest. (Exh. "A" – Depo. of Pl. at p. 13.)

36. Plaintiff was indicted for felony possession of methamphetamine, felony possession of oxycodone, misdemeanor possession of marijuana, and window tint violation. (Exh. "A" – Depo. of Pl. at pp. 55-56.)

37. Plaintiff was never charged with a felony related to the marijuana found in the vehicle. (Exh. "A" – Depo. of Pl. at pp. 55-56.)

This 15th day of July, 2026.

*/s/ Davis A. Dunaway*
DAVIS A. DUNAWAY
Georgia Bar No. 232902
*Attorney for Defendants*

HULL BARRETT, P.C.
801 Broad Street, 7th Floor
Augusta, GA 30901
(706) 722-4481 (Telephone)
(706) 722-9779 (Facsimile)
ddunaway@hullbarrett.com

## CERTIFICATE OF SERVICE

This is to certify that I have on this day electronically filed the foregoing **Defendants' Statement of Undisputed Material Facts** with the Clerk of Court using the NextGen CM/ECF system and served upon the plaintiff, pro se, via email and by depositing a copy of same in the United States Mail with proper postage affixed thereto to ensure proper delivery to the following:

Ms. Tameka L. Walker
407 Woodhazel Way
Hephzibah, Georgia 30815
Walkertameka70@gmail.com

This 15th day of July, 2026.

*/s/ Davis A. Dunaway*
Davis A. Dunaway